2009 JUL -9 PM 3: 18

R Out

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| JAMIL AL-AMIN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: CV607-026 |
| | : | |
| HUGH SMITH; SANCHE JACKSON; | : | |
| JAMES E. DONALD, and STEPHEN | : | |
| UPTON, | : | |
| Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jamil Al-Amin ("Plaintiff"), who is currently incarcerated at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado, filed a cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. Defendants Hugh Smith, Sanche Jackson, Steve Upton, and James Donald ("Defendants") filed a Motion for Summary Judgment. Plaintiff, through counsel, filed a Response and a Supplemental Response. Defendants filed a Reply, and Plaintiff filed a Surreply. For the reasons which follow, Defendants' Motion should be **GRANTED** in part, **DENIED** in part, and **DISMISSED** as moot in part.

AO 72A
(Rev. 8/82)

## STATEMENT OF THE CASE

Plaintiff contends Defendants Smith and Jackson retaliated against him for filing grievances and lawsuits by suspending or terminating his telephone privileges, denying Plaintiff's visitation privileges, and opening his legal mail outside of his presence. Plaintiff also contends Defendants Upton, Donald, and Smith transferred him from Georgia State Prison to the Federal Bureau of Prisons' custody and to the federal facility in Florence, Colorado, as retaliation for lawsuits and grievances he filed and for his involvement in a movement to name him the leader of the Muslim population within the Georgia Department of Corrections.

Defendants assert Plaintiff has not exhausted his administrative remedies pertaining to his retaliation claims based on his legal mail, visitation denials, or his transfer. Defendants also assert most of Plaintiff's claims are barred by the applicable statute of limitations. Defendants aver Plaintiff's retaliation claims fail on the merits. Defendants assert they are entitled to summary judgment based on qualified immunity principles. Defendants also assert that Plaintiff is not entitled to his requested injunctive relief, and that his claim for damages is limited by the Prison Litigation Reform Act.

## STANDARD OF REVIEW

### I.    Exhaustion of Administrative Remedies

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the

merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Defendants allege Plaintiff filed Grievances Numbered 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 and 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 in which he alleged that his legal mail was not processed according to the prison's policy, and he filed an appeal of the denial of these grievances with the Commissioner's Office.[1] However, Defendants contend, Plaintiff did not assert in these grievances (or any other grievance) that Defendants Smith or Jackson took any action regarding Plaintiff's legal mail as a retaliatory measure. Defendants also contend that Plaintiff filed Grievance Number 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 and alleged that his visitation with Luqman Abdullah was terminated improperly. Defendants also contend that Plaintiff filed Grievance Number 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 and alleged that visitors from Detroit were not allowed to visit him. Defendants further contend, however, that Plaintiff did not name any other visitors with whom he was not allowed visitation, nor did Plaintiff assert that Defendants Smith or Jackson denied Plaintiff visitation as a retaliatory measure. Further, Defendants contend that, although Plaintiff filed Administrative Remedy Request Number 473919-F1 once he arrived at the federal facility in Florence, Colorado, Plaintiff complained about his transfer from Georgia State Prison to the federal facility. Defendants contend that Plaintiff did not allege that Defendants Smith, Upton, or Donald were responsible for this transfer or that he was transferred in retaliation for exercising his constitutional rights.

---

[1] The issues which have been sanctioned by the Court are whether Defendants retaliated against Plaintiff by opening his legal mail outside of his presence, restricting his telephone and visitation privileges, and transferring him to a federal facility. Plaintiff and Defendants have flooded the Court with exhibits and other information which are wholly unrelated to the issues before the Court and/or are duplicative of other information, which has made it difficult for the Court to separate the wheat from the chaff.

Plaintiff asserts that he attempted to use the administrative remedies process after he was placed in the Bureau of Prisons' custody to grieve about his transfer to a federal facility, but he was informed that he would be returned to the Georgia Department of Corrections' custody only if the State of Georgia sought his return. Thus, Plaintiff asserts, the federal process was not capable of use for the accomplishment of its purpose. Plaintiff also asserts that the Georgia Department of Corrections' Standard Operating Procedures do not allow for the filing of grievances about inter-institutional transfers. Plaintiff contends that this Court's and the Eleventh Circuit Court of Appeals' decisions in Plaintiff's "Legal Mail case" (CV605-25) confirm that the grievance procedure at Georgia State Prison was not effective, and thus, his claim that his legal mail was opened as a retaliatory measure cannot be dismissed based on his failure to exhaust. Finally, Plaintiff avers that he should not be required to use a grievance procedure which was already relied upon in CV605-25 to dismiss his visitation and telephone privileges claims.

Defendants allege Plaintiff admits he did not exhaust his administrative remedies regarding his allegations that he was subjected to a retaliatory transfer, that his legal mail was opened as a result of retaliation, and that he was denied visitors for a retaliatory reason. Defendants contend that Plaintiff's suggestion that he should be excused from exhausting his administrative remedies as to his retaliatory transfer claim has been rejected by the Supreme Court and the Eleventh Circuit.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a)

states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Plaintiff, as an inmate of the Georgia Department of Corrections, could file a grievance about "any condition, policy, procedure or action (or lack thereof) directed toward inmates over which the Georgia Department of Corrections ha[d] control . . . When submitting a grievance, the inmate should state specifically his or her reason why a policy, procedure, condition, or action warrants change or review." (Doc. No. 53-52[2], p. 4). An inmate could file a grievance with the Warden within five (5) business days from the date "the inmate discovered, or reasonably should have discovered, the incident giving rise to the complaint and was able to file the complaint." (Id. at 7). The

---

[2]  This exhibit is one of the several versions of Standard Operating Procedure IIB05-0001, which was effective from May 1, 2003, until May 31, 2004. (Doc. No. 53-52, p. 1).

time limit could be waived for good cause, and inmates were allowed to explain why a grievance was filed untimely. The Warden had 30 days to respond to the grievance, and, if the inmate wished to file an appeal with the Commissioner's Office, he had four (4) business days to file an appeal. The time for filing an appeal could also be waived for good cause shown. The Commissioner had 90 days in which to respond. (Id. at 10).

This grievance procedure was revised, effective June 1, 2004, and this revised version was in place for the remainder of Plaintiff's incarceration with the Georgia Department of Corrections. Though inmates still were not permitted to grieve about being transferred to another institution, inmates could file "any grievance alleging retaliation, misconduct or harassment . . . regardless of the form." (Doc. No. 53-53, p. 4). An inmate was required to file an informal grievance, and the inmate's complaint and requested relief had to be stated in writing. After the resolution of the informal grievance, the inmate could file a formal grievance, and a copy of the informal grievance was attached to the formal grievance form. (Id. at 6-7).[3]

---

[3] The Court recognizes that nothing in the applicable Standard Operating Procedures required Plaintiff to name any and all individuals he later named in his Complaint. A reasonable interpretation of the requirement that an inmate "state specifically" the reason for his grievance would include an indication of whom an inmate considered responsible for any allegations in his grievance and on what basis the grievance was filed. This interpretation appears even more reasonable in light of the investigative processes involved in the grievance procedures (see Doc. No. 53-53, pp. 6-7, 24 (which called for grievance counselors to meet with an inmate to discuss his complaint and to investigate the complaint, including interviewing witnesses and taking statements. The purpose of the investigative processes was to gather all relevant information concerning the subject of the grievance)). The undersigned's recommended disposition of Defendants' exhaustion assertions are made with this interpretation in mind. See Jones, 549 U.S. at 219 (noting that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances. We leave it to the [district courts] . . . to determine the sufficiency of exhaustion[.]")

**A.    Visitation/Retaliation Claims (Defendants Smith and Jackson)**

Plaintiff filed Informal Grievance Number 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 on December 19, 2004, in which he alleged Sergeant Washington and a lieutenant informed him the visit he was having that day was being terminated.  (Doc. No. 53-54, p. 12).  Plaintiff then filed formal Grievance Number 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[4] on January 18, 2005, in which he complained of his visitations with Luqman Abdullah being terminated, which went "to the nature of the continuous harassment" Plaintiff received at Georgia State Prison.  (Id. at 11). According to Plaintiff, neither he nor his visitor were involved in the investigative process used to determine Abdullah could not visit Plaintiff and that Plaintiff should be able to see the evidence used to terminate his visitations with Abdullah.  (Id. at 14).  Plaintiff's appeal was denied on March 15, 2005.  (Id. at 10).

Plaintiff does not name Defendant Smith or Defendant Jackson (who then was known as "Sanche Martin") at any time in this grievance, nor does he allege that his visitation privileges with Luqman Abdullah were suspended as retaliation for Plaintiff exercising his First Amendment rights.  The grievance procedure allowed Plaintiff to file a grievance alleging he had been retaliated against, but the procedure also required Plaintiff to state his complaint in writing.  Plaintiff's complaint, as presented in Grievance Number 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, was that his visitation with Luqman Abdullah was terminated and that he was not involved in the process used to terminate that visitation.  Defendants Smith and Jackson were not put on notice that Plaintiff alleged they terminated his visitation privileges as a retaliatory measure.  Thus, Plaintiff failed to exhaust his

---

[4] The undersigned presumes this is the correct Grievance Number.  The copies of the grievances Defendants submitted are of such quality that the undersigned cannot determine the number listed on the grievance forms.

available administrative remedies for his claim that his visitation with Luqman Abdullah was terminated as a retaliatory measure.

Plaintiff filed Informal Grievance Number 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 on November 25, 2005, and alleged his visitation was terminated the previous day pursuant to Hugh Smith's orders. Plaintiff also alleged that this was the second time action had been taken against him and "on both occasions I had pending legal actions against Hugh Smith." (Doc. No. 53-55, p. 5). Plaintiff filed Grievance Number 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 on December 9, 2005, and complained about Defendant Smith terminating his visits with people who traveled from Detroit, Michigan, to see him. (Id. at 2). Plaintiff filed an appeal on January 13, 2006.

It appears that Plaintiff exhausted his administrative remedies regarding his claim that Defendant Smith restricted his visitation in November 2005[5] as retaliation because Plaintiff filed lawsuits against him. However, Plaintiff does not mention Defendant Jackson by name in this grievance, nor does he indicate Defendant Jackson restricted his visitation as a retaliatory measure. This portion of Defendants' Motion should be **granted** in part and **denied** in part.

**B.    Telephone/Retaliation (Defendants Smith and Jackson)**

On February 9, 2005, Plaintiff filed Informal Grievance Number 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 in which he alleged his telephone privileges had been severely restricted by Warden Smith as part of "a continued pattern of harassment." (Doc. No. 53-54, p. 5). Plaintiff then

---

[5] Plaintiff contends that he was denied visitations on several occasions. However, the only evidence before the Court indicates that Plaintiff only filed grievances based on his visitation privileges on two (2) occasions, as discussed in this Report. While the undersigned does not expect that Plaintiff had to file a grievance every time his visitation privileges were violated, Plaintiff did need to put Defendant Smith on notice that Plaintiff felt his visitation privileges were restricted as a retaliatory measure on more than two (2) occasions.

filed Grievance Number 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 and stated that his request to have the Standard Operating Procedure about abuse of the phone system sent to him was denied by Defendant Smith. In this grievance, Plaintiff also stated there was an "escalation of harassment in a retaliatory manner, since I filed a civil action against Hugh Smith and others." (Id. at 4). By the time Plaintiff received a response to his appeal of the denial of this grievance on April 19, 2005, his telephone restrictions had been rescinded. Plaintiff states the fact that his telephone restrictions had been rescinded shows that the action itself was punitive in nature and the restoration of his telephone privileges did not "address" "other actions of escalation of harassment and retaliation." (Id. at 3).

Plaintiff exhausted his available administrative remedies against Defendant Smith based on Plaintiff's claim that Defendant Smith placed restrictions on his telephone privileges in January 2005 as retaliation for Plaintiff's filing of a civil action against Defendant Smith. In fact, it appears Defendants admit Plaintiff exhausted his administrative remedies on this issue as to Defendant Smith. Once again, however, Plaintiff did not name Defendant Jackson in his grievance or otherwise make it evident that Plaintiff considered Defendant Jackson responsible for restricting his telephone privileges based on a retaliatory intent. In addition, there is no evidence before the Court that Plaintiff filed a grievance concerning his claim that Defendant Smith retaliated against him by removing two (2) telephone numbers from Plaintiff's approved list in June and August 2003. This portion of Defendants' Motion should be **granted** in part and **denied** in part.

**C.    Opening Legal Mail/Retaliation (Defendants Smith and Jackson)**

Plaintiff filed Grievance Number 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 on August 23, 2003, and alleged that Defendant Jackson disregarded Department of Corrections' policy concerning legal mail and instructed others to open his legal mail.  Plaintiff also alleged that Defendant Jackson made a racial slur against him and called his wife an unkind name.  (Doc. No. 53-55, p. 13).   Plaintiff asked that his privileged mail be treated as such and that someone speak to Defendant Jackson about her "racial attitude."  (Id. at 9).  Plaintiff was advised in the response to his appeal that the staff at Georgia State Prison would take appropriate action to ensure Plaintiff's legal mail would not be opened outside of his presence.  (Id. at 8).  Plaintiff filed Grievance Number 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 on October 14, 2004.  In this grievance, Plaintiff contended he had some legal mail, which was clearly labeled as such, opened by a machine.  Plaintiff asked that "whoever" was handling his mail be educated or trained about the Standard Operating Procedure.   (Id. at 19).  Plaintiff received a response to his appeal, which was dated December 1, 2004.  (Id. at 18).  Plaintiff mentioned no names in this grievance.

Plaintiff did not contend in these grievances that Defendant Smith was involved in the opening of his legal mail.   In Grievance Number 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, Plaintiff only claimed that Defendant Jackson opened his legal mail *in violation of policy*; Plaintiff did not allege that Defendant Jackson's actions were taken as retaliation for Plaintiff having filed other grievances or lawsuits against Defendant Jackson or any other staff member. Plaintiff has presented no evidence that he exhausted his administrative remedies as to his claim that Defendants Smith and Jackson opened his legal mail as retaliation for

Plaintiff's exercise of his constitutional rights. This portion of Defendants' Motion should be **granted**.

### D.    Retaliatory Transfer (Defendants Smith, Upton, and Donald)

Once Plaintiff was transferred to federal custody, he had the ability to "seek formal review of an issue relating to any aspect of his . . . own confinement." (Doc. No. 53-57, p. 2). "The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate shall attempt to resolve any issue he may have informally. 28 C.F.R. § 542.13(a). An inmate dissatisfied with the informal request resolution can file a grievance with the Warden, and the Warden has 20 days to respond. 28 C.F.R. §§ 542.14(a) and 542.15(a). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director. 28 C.F.R. § 542.15(a). Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons. Id., see also, Doc. No. 53-57, 6-9.

According to Debbie Straight, the Social Science Research Analyst and Administrative Remedy Clerk at the Florence, Colorado, facility, Plaintiff could have filed a Request for Administrative Remedy in which he alleged that Defendants Donald, Smith, and Upton transferred him from Georgia State Prison to federal custody in retaliation for Plaintiff exercising his constitutional rights. (Doc. No. 53-56, ¶ 14). Ms. Straight asserts that, had Plaintiff filed such a Request, staff at Florence would have investigated his Administrative Remedy Request. Ms. Straight asserts that Plaintiff did

not allege in any Administrative Remedy Request that Defendants Donald, Smith, or Upton retaliated against him by having him transferred from Georgia State Prison to the federal Supermax Facility in Florence, Colorado. (Id.)

Plaintiff filed Administrative Remedy Request Number 473919-F3 on December 3, 2007, and he complained about being incarcerated more than 500 miles from Georgia, which placed a hardship on him and his family. (Doc. No. 53-59, p. 14). Plaintiff sought a transfer back to state custody or to a federal facility closer to his home. (Id. at 5).

There is no evidence that Plaintiff filed any Administrative Remedy Request since his placement in federal custody in which he alleged his transfer was made by Defendant Donald, Smith, or Upton as a retaliatory measure. The undersigned recognizes Plaintiff's assertion that the administrative remedy process was not available to him because the requested resolution of his grievance (another transfer) could not be achieved through that system. Plaintiff's assertion, however, ignores the fact that Plaintiff could have filed an Administrative Remedy Request in which he alleged he was transferred to federal custody by Defendants Donald, Smith, or Upton in retaliation for exercising his constitutional rights to access to the courts and the free exercise of his religion, but Plaintiff did not do so prior to filing the amendment to his original Complaint.[6]

---

[6] The undersigned notes Plaintiff's contention that he could not grieve his transfer under Standard Operating Procedure IIB005-001, effective May 1, 2003. However, Plaintiff could have grieved his transfer based on his claim that he was transferred based on a retaliatory motive. See Standard Operating Procedure IIB005-001, effective June 1, 2004, Doc. No. 53-53.

## II. Motion for Summary Judgment Standard of Review[7]

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party

---

[7] Given the undersigned's recommended disposition of Defendants' Motion on exhaustion grounds, only Plaintiff's claims that Defendant Smith retaliated against him by restricting his telephone privileges and denying visitation on one occasion remain for discussion under the summary judgment standard of review.

would be unable to prove his case at trial.  Id.  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

**Discussion and Citation to Authority**

**A.    Retaliation**

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted).  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech."  Id.  A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment."  Id.

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  Crawford-El v. Britton, 523 U.S. 574, 600 (1998).  The issue of intent is a question for the trier of fact.  Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment.  Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir.1995)).

**1.    Telephone Privileges/Retaliation Claim**

Defendant Smith states that Georgia Department of Corrections' personnel have a security interest in ensuring that inmates use the telephone system "in a manner that

is consistent with maintaining the security of the institution." (Doc. No. 52-2, p. 33). Defendant Smith also states this security interest is recognized by Standard Operating Procedure IIB01-0007. Defendant Smith asserts that all numbers on an inmate's calling list must be approved for potential security issues and that a three-way call (or the attempt to make one) is a misuse of the telephone system because an inmate may attempt to reach a number which may have not been approved. Defendant Smith avers that significant security risks may be involved with an inmate conducting a radio interview from prison, especially a high profile inmate like Plaintiff. Smith asserts that Plaintiff attempted to misuse the prison's telephone system on three (3) occasions— June 26, 2003, August 6, 2003, and January 25, 2005. Defendant Smith contends that Plaintiff tried to make a three-way call on June 26 and August 6, 2003, and, as a result, Defendant Smith ordered that two (2) telephone numbers be removed from Plaintiff's calling list. Defendant Smith also contends that Plaintiff conducted a radio interview on January 25, 2005, through the prison's telephone system, and Defendant Smith ordered that Plaintiff's telephone privileges be suspended, with exceptions made for his wife and his attorneys. Defendant Smith also alleges that Plaintiff's telephone privileges were suspended until March 23, 2005. Defendant Smith contends that he suspended Plaintiff's telephone privileges on these three (3) occasions[8] because Plaintiff misused the telephone system, not because Plaintiff may have filed lawsuits or grievances against Defendant Smith or other prison officials or because of Plaintiff's religious practices.

---

[8] Even though the undersigned has found Plaintiff's only remaining claim in this regard concerns January 25, 2005, the other two (2) occasions when Defendant Smith restricted Plaintiff's telephone privileges are included as part of Defendant Smith's assertions.

Plaintiff asserts that there is "significant evidence" that Defendant Smith restricted his telephone privileges as retaliation.

Defendant Smith submitted Standard Operating Procedure ("SOP") IIB01-0007, which concerns an inmate's access to telephones. This SOP allows each inmate to have up to 20 people on his established phone list. An inmate can place telephone calls through the inmate phone system only to those numbers on the inmate's approved phone list. (Doc. No. 53-22, p. 19). The inmates are "responsible for using the phone system in accordance with operating instructions. Misuse of the phone system . . . will result in disciplinary action which may include loss of phone privileges in addition to other sanctions." (Id. at 26). Inmates are informed that "[d]isciplinary infractions related to telephone issues may result in restriction of telephone privileges in addition to other sanctions." (Id. at 20).

In an entry dated January 26, 2005, a handwritten entry on a call log indicates Defendant Smith blocked all of Plaintiff's calls, except to his attorneys and his wife. Plaintiff's phone numbers were reinstated on March 23, 2005. (Id. at 3). Defendant Smith submitted his Affidavit in which he states all telephone numbers on an inmate's calling list must be approved for potential security issues. Defendant Smith also states that a three-way call or the attempt to make one was a misuse of the telephone system, and an inmate who misused the system in this way might be subject to disciplinary action. (Doc. No. 53-19, ¶ 13). Defendant Smith asserts that inmates were not permitted in 2005 to conduct interviews with the media unless the interviews were approved by the Public Information Office, nor were inmates allowed "to conduct either live or taped radio interviews through the Georgia State Prison telephone system

AO 72A
(Rev. 8/82)

because of the high potential for a breach in security." (Id. at ¶ 14).  Defendant Smith also asserts that an inmate conducting an interview in any form through the telephone system would be misusing the system and be subjected to disciplinary sanctions. Defendant Smith contends that he ordered Plaintiff's telephone privileges be suspended, with the exception of calls to his wife and attorneys, based on Plaintiff conducting a radio interview on January 25, 2005, and Plaintiff's telephone privileges were reinstated on March 23, 2005.  According to Defendant Smith, he suspended Plaintiff's telephone privileges "solely because Plaintiff had misused the telephone system" and not because Plaintiff filed grievances and lawsuits or tried to practice his religion.  (Id. at ¶ 18).

Defendant Smith also submitted the Affidavit of Amanda Marshall, a secretary in the Executive Assistant's Office at Georgia State Prison.  Ms. Marshall states she is the official custodian of the recorded inmate telephone calls at Georgia State Prison, and she can "access, listen to, and copy the recorded telephone calls through [her] computer."  (Marshall Aff., ¶ 2).  Ms. Marshall attached to her Affidavit a Compact Disc ("CD") which "contains a true and accurate copy of the following outgoing telephone calls made by [Plaintiff] while he was housed at Georgia State Prison: . . .  two calls on January 25, 2005, in which the Plaintiff conducted a radio interview via a three-way telephone call with telephone number 334-418-0367."  (Id. at ¶ 3).

A review of the CD reveals that, on January 25, 2005, Plaintiff[9] placed two (2) calls to telephone number 334-418-0367 and spoke to "Sahib".  During the first call,

---

[9]  The identification number listed for these phone calls is 0000492521, which was Plaintiff's Georgia Department of Corrections' prisoner number, preceded by four (4) zeroes, as set forth in SOP IIB01-0007. (Doc. No. 53-22).

which is time stamped at 21:36:15, Plaintiff and Sahib discussed that "they" were running a "little late" and that there would be two (2) 15 minute "things", probably to help "cut back on the costs" and that there were problems with "connecting earlier." At the three (3) minute mark, it sounded like Sahib said, "OK, here they are." Mere seconds later, a female voice came on the line and asked "Is Sahib available? Hi, I'm calling from KPSA[10] with J.R. and Chairman Fred Hampton, Jr. Can you hold on, and I'll put you through 'the board'? You should be able to hear them, and they'll check your levels and start recording for the interview." Plaintiff asked Mr. Hampton if he wanted him to read a piece he had written before "they record" at approximately the 5:30 mark. At 8:10, Mr. Hampton stated his name and that they were "coming live and direct" and honored to have Jamil Al-Amin with them. This first phone call ended after 15 minutes elapsed, and, at 21:52:43, Plaintiff initiated another call to telephone number 334-418-0367 and continued speaking with Mr. Hampton for another 15 minutes. (CD attached to Marshall Aff.).

When Defendants' counsel asked Plaintiff about the termination of his telephone privileges during his deposition, Plaintiff said his privileges were terminated "in retaliation for lawsuits and grievances" that he filed. (Doc. No. 53-2, p. 16). Plaintiff explained he believed Defendant Smith acted in a retaliatory manner because "[t]here was no other reason. There was no other reason, you know, within the guidelines of telephone use that the—you know, I hadn't violated any—any of the reason of the statutes concerning the use of the telephone." (Id.) Defendants' counsel asked Plaintiff

---

[10] An internet search indicates KPSA is a radio station in Roswell, New Mexico, which broadcasts on the AM frequency.

if he had given any radio interviews during his incarceration at Georgia State Prison. Plaintiff responded:

> My conversation was recorded—was recorded by a person that I could communicate with, the person—a normal person who is on my list—my phone list, and I was made aware that they recorded some of the conversation that we had. There was [sic] certain questions that he would ask, they would record them and they would—you know, whatever they do with it.

(Id. at 17). Plaintiff denied doing any radio broadcasts, because he did not "have any access or facility" from which he could broadcast. (Id.) Plaintiff continued by saying,

> Now, if someone records the conversation—a person—the person who was writing the letter asks me certain questions that may have been posed by people in the audience, or people from the community, in which I respond to those, he's [Sahib] recording it. Now, how he—how he plays it or what he does with it—my understanding was they made CDs.

(Id. at 18).

In his Statement of Undisputed Facts, Defendant Smith asserts that he suspended Plaintiff's telephone privileges on three (3) occasions because Plaintiff misused the telephone system, not because of any grievances or lawsuits Plaintiff may have filed against him. Plaintiff responded to this assertion by disputing Defendant Smith's assertion "to the extent offered as support for conduct by [Plaintiff] which might support the conditions of his incarceration at issue in this lawsuit. [Plaintiff] admits that [this paragraph] recounts the stated reason for [Defendant] Smith's suspension of [Plaintiff's] telephone privileges. [Plaintiff] denies that he misused the phone system or intentionally attempted to make a three-way call in violation of any previously announced prison policy." (Doc. No. 66-2, p. 29).

Finally, in his Declaration, Plaintiff denies ever conducting radio interviews while he was housed at Georgia State Prison. Plaintiff alleges that he has had two-person

telephone conversations with an individual named Sahib, and that Sahib would ask him questions involving Muslim concerns. According to Plaintiff, he later learned that Sahib played recordings of some of their conversations on the radio. (Doc. No. 65-2, ¶ 52). Plaintiff states that he had no control over people outside of Georgia State Prison who might have recorded his conversations, which was not a violation of policy. Plaintiff denies having called into a radio station or "spoken with a broadcaster or similar person while he or she was broadcasting." (Id. at ¶ 53).

Plaintiff offers no evidence from which a jury could find that Defendant Smith restricted his telephone privileges as retaliation for Plaintiff filing grievances or lawsuits against Defendant Smith or any other official with the Georgia Department of Corrections or for exercising his religious beliefs. Plaintiff offers general denials of Defendant Smith's assertions and does not overcome his burden, despite his many opportunities to do so. The objective evidence—the CD recording of Plaintiff's telephone calls—undermines Plaintiff's assertions that he did not conduct an interview through the telephone system in violation of policy. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff has not shown the existence of a genuine issue of material fact as to whether Defendant Smith restricted his telephone privileges as a retaliatory measure. Defendant Smith's Motion on this ground should be **granted**.

## 2.  Visitation Privileges Retaliation Claim

Defendant Smith asserts that prison administrators have a security interest in ensuring that visitors do not pose a security threat to the institution and that, as Warden, Standard Operating Procedure IIB01-0005 provided him with "significant discretion" in determining who may be approved as a visitor.  Defendant Smith contends that a person requesting a visit with an inmate had to complete a Visitation Request form and be approved by prison administration.  Defendant Smith alleges he did not deny Plaintiff's visitation privileges to retaliate against Plaintiff because Plaintiff may have filed grievances or lawsuits against him or any other prison official or because of Plaintiff's religious practices.

Plaintiff contends the evidence of record confirms that Defendant Smith's purported justification for denying Plaintiff visitation privileges is unsupported or applied arbitrarily to him.  Plaintiff asserts that there is at least a genuine issue of material fact as to Defendant Smith's asserted basis for engaging in conduct Plaintiff contends was retaliatory in nature.

SOP IIB01-0005 is the procedure governing Visitation of Inmates in the Georgia Department of Corrections' custody.  This SOP allowed for visitation by an inmate's significant others and next of kin, and an inmate's visitors had to be authorized to visit by the Warden or Superintendant of the facility.  (Doc. No. 53-29, pp. 5-6).  This SOP sets forth requirements for the visitors, as well as the inmates, including the items visitors may bring into the prison with them, the clothing they may wear, and that they will be required to submit to a preliminary search of their person, at a minimum.

The remaining issue for the Court's determination is whether Defendant Smith denied Plaintiff visitation in November 2005. Defendant Smith has not discharged his burden of showing that there is no genuine issue of material fact as to this issue. Defendants have submitted evidence of Plaintiff's visitors, visitor request forms, and forms indicating if these visitors were approved or disapproved to visit Plaintiff. However, there is nothing before the Court which indicates Plaintiff received visitors between July 31, 2005, and March 4, 2006, or that any requests for visitation were made and denied during that time. (Doc. Nos. 53-32, -33, -34, -35, -36, -37). This portion of Defendants' Motion should be **denied**. [11]

## II. Qualified Immunity

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity, so long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government

---

[11] The undersigned notes Defendant Smith's assertion that Plaintiff has no "absolute constitutional right to visitation privileges." In support of this assertion, Defendants cite to Ky. Dep't of Corr. v. Thompson, 490 U.S. 454 (1989). In Thompson, the Supreme Court determined that the Kentucky regulations at issue did not give state inmates a liberty interest, under the Fourteenth Amendment, in receiving certain visitors. 490 U.S. at 465. Defendant Smith's assertion ignores the fact that Plaintiff claims he retaliated against Plaintiff, and a manifestation of that retaliation was the denial of visitations in November 2005. Thompson does not lend support for Defendant Smith's contentions in this regard.

official has shown he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: First, the court must determine whether plaintiff's allegations, if true, establish a constitutional violation. Hope, 536 U.S. at 736. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, then "the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance concerning the conditions of his imprisonment." Id.

The Court accepts that Defendant Smith was acting in his discretionary authority as Warden whenever he may have denied Plaintiff visitation privileges. Accepting Plaintiff's allegations as true, he has established Defendant Smith violated his constitutional right to be free from retaliation based on Plaintiff having filed lawsuits and grievances and for attempting to exercise his religion. It was clearly established law during the relevant time that a prison official cannot retaliate against an inmate for exercising his rights. Thus, Defendant Smith is not entitled to qualified immunity protection, and this portion of Defendants' Motion should be **denied**.

## C.    18 U.S.C. § 3626

Defendant Smith asserts 18 U.S.C. § 3626(a)(1)(A) restricts this Court's power to order Plaintiff's return to the custody of the Georgia Department of Corrections.  Plaintiff asserts he only requests the restoration of the status quo which existed before he was transferred.    As the undersigned has determined Plaintiff did not exhaust his administrative remedies for his claim that he was transferred to federal custody based on retaliatory motives, this portion of Defendants' Motion should be **dismissed** as moot.

## D.    Plaintiff's Claim for Damages

Defendant Smith asserts Plaintiff is precluded from seeking monetary damages because he cannot show he suffered any physical injury stemming from his retaliation claims.   Plaintiff contends that he has shown he has suffered from physical injuries based on Defendants' alleged actions.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000)).   "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

Plaintiff has sought damages for more than emotional injuries.  Thus, this portion of Defendants' Motion should be **denied**.

## CONCLUSION

Plaintiff failed to exhaust his available administrative remedies prior to filing this cause of action based on his assertions that Defendants Jackson, Donald, and Upton took retaliatory action against him. Thus, it is my **RECOMMENDATION** that Plaintiff's claims against Defendants Jackson, Donald, and Upton be **dismissed**. It is also my **RECOMMENDATION** that Defendant Smith be **GRANTED** summary judgment on Plaintiff's claim that Defendant Smith retaliated against Plaintiff by restricting his telephone privileges in January 2005. That portion of Defendants' Motion based upon 18 U.S.C. § 3626 should be **dismissed** as moot. It is my further **RECOMMENDATION** that Defendants' motion be **DENIED** on Plaintiff's claim that Defendant Smith retaliated against Plaintiff by denying visitation privileges on one (1) occasion and on Plaintiff's claim for monetary damages.

SO REPORTED and RECOMMENDED, this _____ 9th day of July, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)