# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

JAMIL AL-AMIN,

    Plaintiff,

v.

HUGH SMITH,

    Defendant.

CIVIL ACTION NO.: CV607-026

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jamil Al-Amin ("Plaintiff"), who is currently incarcerated at the United States Penitentiary Administrative Maximum Facility in Florence, Colorado, filed a cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. Defendant Hugh Smith ("Defendant") filed a Supplemental Motion for Summary Judgment. Plaintiff, through counsel, filed a Response. Defendant filed a Reply. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendant retaliated against him by terminating his visitation with Luqman Abdullah on November 24, 2005.[1] Defendant asserts that he is entitled to summary judgment on this remaining issue, whether on the merits of this claim or based on qualified immunity.

---

[1] The only issue remaining for this Court's disposition is Plaintiff's nominal damages claim against Defendant based on the allegation that Defendant retaliated against him by terminating this visitation. (Doc. No. 106).

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable

inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

Defendant contends that Plaintiff filed two (2) grievances in which he stated that Defendant terminated his visitation privileges as retaliation, but Plaintiff did not name the particular individual from Michigan with whom his visitation was terminated. Defendant asserts that a review of Plaintiff's Visitation Roster reveals that Luqman Abdullah was the only visitor from Michigan on Plaintiff's approved visitors list. Defendant also asserts that he received letters from Luqman Abdullah and Sahib Abdul-Salaam of Alabama, and both of these men questioned why his visit with Plaintiff on November 24, 2005, was terminated. Defendant alleges that he and other officials had serious safety concerns about Plaintiff's incarceration at Georgia State Prison and that, because of these concerns, Defendant ordered that Plaintiff be moved from the visitation area of Georgia State Prison on November 24, 2005. According to Defendant, protesters gathered in Reidsville, Georgia, on Thanksgiving Day for several years to protest Plaintiff's incarceration, and November 24, 2005, was Thanksgiving Day. Defendant asserts that his security concerns "were further heightened" because that day was a holiday, and the prison staff was at a reduced level. (Doc. No. 97-2, p. 4). Defendant avers that the only reason he decided to cancel Plaintiff's visitation on this date was due to security concerns, not out of retaliation for lawsuits or grievances Plaintiff filed, the practice of his religion, or for any retaliatory reason. Defendant asserts that Plaintiff had 42 visitations with Luqman Abdullah between August 31, 2003, and July 3, 2005, and 16 visitations with him from March 11, 2006, until June 23, 2007.

3

Plaintiff contends that Defendant had the Visitation Roster well in advance of the dispositive motions deadline, and Defendant could and should have presented evidence supporting his purported reason to terminate Plaintiff's visit with Luqman Abdullah with the previously filed Motion for Summary Judgment. Plaintiff alleges that Defendant's disclosure of the letter from Luqman Abdullah belies his earlier contention that he was incapable of addressing Plaintiff's retaliatory termination of visitation claim. Plaintiff also alleges that this letter removes any ambiguity about the identity of the unnamed visitor in his grievances. Plaintiff asserts that Defendant's purported security concerns have no rational relationship to the restrictions imposed. Plaintiff contends that Defendant obviously knew about this annual vigil at the time he approved the visitation and before the dispositive motion filing deadline in this case, and there is no evidence that peaceful protesters created a security risk. Plaintiff also contends that, even if a security risk had been adduced, Plaintiff's visitations would only need to be terminated for the day of the protest, not until December 1, 2005.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison official's actions were "the result of his having filed a grievance [or lawsuit] concerning the conditions of his imprisonment." Id.

Once a defendant moves for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify

AO 72A
(Rev. 8/82)

affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995)).

Defendant states in his Second Supplemental Affidavit that Plaintiff did not name the particular visitor's name in either of the grievances he filed pertaining to the termination of his visitation privileges. (Doc. No. 97-5, ¶¶ 5-6). Defendant also states that a review of the Visitation Roster reveals that Luqman Abdullah was the only person from Michigan on Plaintiff's approved visitors list. Defendant further states that he stated in his previous Affidavit and during his deposition that he and other officials had "very serious security concerns regarding the continued housing of [Plaintiff] at Georgia State Prison." (Id. at ¶ 10). Defendant declares that his concerns stemmed from being told upon Plaintiff's arrival that several thousands of people vowed to take Plaintiff from the State of Georgia by force, if necessary, and there was an escape plot at Georgia State Prison and an attempted escape from the Fulton County Jail in which it was believed Plaintiff may have played a role (though he was never charged). Defendant states that his concerns were "further heightened" on November 24, 2005, because there were protesters in Reidsville who were "gathered for the purpose of protesting [Plaintiff's] incarceration[ ]", and that day was a holiday with a reduced level of security and other personnel at the Prison. (Id. at ¶ 11). Defendant avers that he canceled Plaintiff's visitation on November 24, 2005, "solely for security reasons, not out of

retaliation for any lawsuits or grievances that he filed, for his practice of his religion, or for any other retaliatory reason." (Id. at ¶ 12). Defendant also avers that Plaintiff received extensive visitation from family members and "Significant Other[s]" while he was housed at Georgia State Prison, including 42 visits with Luqman Abdullah from August 31, 2003, to July 3, 2005, and an additional 16 visits from March 11, 2006, until June 23, 2007. (Id. at ¶ 13).[2]

In addition to Defendant's Second Supplemental Affidavit, the undersigned reviewed the entire record, particularly the documents the parties submitted in support of their positions in the previously filed Motion for Summary Judgment, in reaching his recommended disposition of that Motion.[3] This evidence reveals that Defendant made the decision to terminate Plaintiff's visitation with Luqman Abdullah due to security concerns, and not as retaliation, on November 24, 2005.[4] (Doc. No. 53-8, pp. 23-25; Doc. No. 53-19, ¶¶ 3-9, 54). In contrast, Plaintiff offers nothing more than his unsupported assertions that Defendant terminated this visitation as retaliation. (See, e.g., Doc. No. 53-2, pp. 20-21). When Plaintiff was specifically asked what evidence he had to support his assertion that his visitation with Luqman Abdullah was terminated due to retaliation, Plaintiff said:

---

[2] Defendant explains that there is no readily available information regarding inmates' visitations from August 2005 through February 2006 due to a change in the computer system. (Doc. No. 97-5, p. 5, n.1). This explanation fits within the undersigned's analysis in the first Report and Recommendation regarding the dates between July 31, 2005, and March 4, 2006. (Doc. No. 88, p. 21).

[3] Given the undersigned's detailed account of the exhibits in his first Report and Recommendation, the specifically cited documents in this Report are given as examples only of what the evidence of record reveals or does not reveal.

[4] Plaintiff alleges that Defendant improperly denied visitation privileges to Luqman Abdullah on December 19, 2004. (See, Doc. No. 53-19, ¶ 20; Doc. No. 53-33, p. 1). However, this specific incident is not a basis for Plaintiff's cause of action, though it appears that both parties have conflated the facts involved for events allegedly occurring on December 19, 2004, and November 24, 2005.

AO 72A
(Rev. 8/82)

A. Well, what I'd like to have brought up, brought, you know, as evidence is the film of the visit which would substantiate in terms of the claim that's being made by [Luqman Abdullah], and that would be evidence and the fact that if there is no evidence of this then it must be some form of harassment.

Q. What else in regards to your visitation privileges? . . .

A. I don't understand [people being denied being added to my list of visitors]. You know, I would consider that as harassment. But there is nothing—how do you prove harassment as far as when they say that, you know, the person can't visit?

(Doc. No. 53-62, pp. 21-22).

There is simply no evidence before the Court indicating that Plaintiff's visitation with Luqman Abdullah was terminated on November 24, 2005, as an act of retaliation on Defendant's part. Plaintiff has failed to create a genuine issue of material fact as to this issue.

It is unnecessary to address the remaining ground of Defendant's Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Supplemental Motion for Summary Judgment be **GRANTED**. Plaintiff's Complaint should be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 16th day of July, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)